Pierre Reasner and Pennsylvania National Mutual Casualty Insurance Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Raymond C. Beltz, Jr., Respondents.

Argued February 27, 1978, before Judges Wilkinson, Jr., Mencer and Blatt, sitting as a panel of three.

*George F. Douglas, Jr.,* for petitioners.

*Kenneth E. Hankins, Jr.,* with him *James N. Diefenderfer,* for respondents.

Opinion by Judge Mencer, June 23, 1978:

Pierre Reasner and his workmen's compensation insurance carrier appeal from a decision of the Workmen's Compensation Appeal Board (Board) finding that Raymond C. Beltz (claimant) was Reasner's employee at the time he was injured. We affirm the Board's award of benefits.

Reasner is the owner-operator of a logging business. Prior to the date of his injury, claimant had never worked for Reasner. Claimant's brother Jay had occasionally worked for Reasner when there was no work available in his regular occupation as a truck driver. On the morning of August 1, 1974, Jay telephoned Reasner to see whether there was work available for him that day. He was informed by Reasner's wife that, although work was available, Reasner was

going to be out of town and did not want Jay working in the woods alone. Mrs. Reasner told Jay he could work if he brought someone else along who would be able to summon help if Jay were injured.

Shortly thereafter, Jay and the claimant arrived at Reasner's home where a discussion with Reasner and his wife ensued. The crucial aspects of this conversation are disputed. According to claimant and his brother, Reasner addressed both of them and gave them his instructions on the work to be done that day. According to Reasner and his wife, however, these instructions were addressed only to Jay, and claimant was expressly told he was going along only as a watchman for the benefit of his brother and was not to touch any of Reasner's equipment. It is undisputed there was no discussion of wages.

Claimant and his brother then proceeded to the working area in a vehicle supplied by Reasner. Jay showed claimant how to operate Reasner's timberjack, a four-wheel vehicle used to drag logs. When claimant attempted to operate the machine, he lost control of it and severly injured his leg. His subsequent claim for workmen's compensation benefits was heard by a referee who allowed benefits. On appeal, this decision was affirmed by the Board.

The major issue in this case is whether or not claimant was Reasner's employee. Section 104 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §22, adopts the common law concept of "servant" as part of the statutory definition of "employe." The common law elements of a master-servant relationship are (1) a contract of employment for wages, express or implied, *Harris v. Seiavitch,* 336 Pa. 294, 9 A.2d 375 (1939); *Barr v. B & B Camper Sales,* 7 Pa. Commonwealth Ct. 323, 300 A.2d 304 (1973), and (2) the existence in the

alleged master of the right to control the work to be done and the manner of its performance, *Workmen's Compensation Appeal Board v. Piccolino,* 20 Pa. Commonwealth Ct. 369, 341 A.2d 922 (1975); *Barr, supra.*

The question of whether an employer-employee relationship exists is one of law based upon findings of fact. *See, e.g., Workmen's Compensation Appeal Board v. Dupes,* 24 Pa. Commonwealth Ct. 47, 353 A.2d 908 (1976). Here, unfortunately, the only relevant finding of fact merely states that "[o]n August 1, 1974 the claimant was employed by the defendant within the meaning of the Act." If there were nothing more in the decision of the referee or the Board on the issue, a remand for relevant factual findings would be necessary. However, in that portion of his decision labeled "Discussion" the referee proceeded to make what are essentially findings of fact:

> Considering the testimony of the employer along with the testimony of the claimant and brother, a fellow employe, this Referee cannot conceive that the employer would expect a twenty-four year old man to go into the woods for a period of eight to ten hours, perform some service and not receive some pay. It is also hard to conceive that the employer did not expect the claimant to perform work other than a watchman. . . . The employer had 'control' in this case and claimant was performing a service for which he anticipated pay, and had a right to anticipate pay, and this service was promoting the interests of the employer.

The referee thus found that Reasner expected claimant to perform services, other than as a watchman, which would promote Reasner's logging business. The referee has necessarily rejected the testimony of Reasner and his wife that claimant was specifically

told not to do any work. The referee's finding is supported by the testimony of claimant and his brother that Reasner directed his instructions for the day to both of them. For example, claimant testified as follows: "No the way he [Reasner] explained it and he directed it to both and said: 'There is two of you, and I want the side of the mountain cleared and drug down by the time I get back.' " (N.T. 13). The implication of this testimony is that Reasner expected more work to get done with two men working than with one. Under these circumstances, claimant had a right to expect to be paid, and Reasner must reasonably have expected to pay him. Thus, the circumstances indicate that an implied contract of employment for wages did in fact exist.[1]

The referee also found that Reasner had "control." Again, this finding is supported by the testimony of claimant and his brother regarding Reasner's instructions as to the work he wanted done. Moreover, the equipment which claimant must have been expected to use belonged to Reasner, and Reasner would therefore have had the right to control the specific manner in which the equipment was used. *Cf. Mohan v. Continental Distilling Corp.*, 422 Pa. 588, 591, 222 A.2d 876, 878-79 (1966) (ownership of machinery upon which alleged employee was working an important factor in finding employer-employee relationship.)

---

[1] As noted in the text, there was no discussion of wages between Reasner and claimant or between Reasner and claimant's brother. Jay's testimony was that Reasner's custom was to pay $15 per load of timber. Reasner may therefore have anticipated making only one lump payment, expecting the brothers to divide the amount between them. The fact that the funds may have passed through Jay prior to reaching the claimant is of no controlling significance. *See, e.g., Workmen's Compensation Appeal Board v. American Mutual Liability Insurance Co.*, 19 Pa. Commonwealth Ct. 502, 339 A.2d 183 (1975).

Questions of credibility are, of course, for the referee, and his findings, if supported by substantial evidence, will not be disturbed. *See, e.g., General Tire & Rubber Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 473, 332 A.2d 867 (1975). Although the referee could have found the facts to be in accordance with the testimony of Reasner and his wife, we cannot hold that he erred in finding the testimony of claimant and his brother to be more credible. We will therefore affirm the holding of the referee and the Board that an employer-employee relationship existed.

Reasner also argues that the referee erred in finding that claimant's disability continued after April 3, 1975, when claimant began working as a laborer. Claimant worked for 3 months, until July 3, 1975, but, according to his undisputed testimony, was compelled to resign because pain in his leg from the injury periodically rendered him unable to walk. The referee awarded benefits from the date of accident until April 3, 1975 and from July 3, 1975 for an indefinite period. Since claimant's uncontradicted testimony indicates that his disability continued despite the fact he was able to work for a 3-month period, the referee's finding is supported by the evidence and will not be disturbed.

## ORDER

AND Now, this 23rd day of June, 1978, the appeal of Pierre Reasner and Pennsylvania National Mutual Casualty Insurance Company is hereby dismissed, and the order of the Workmen's Compensation Appeal Board, dated February 17, 1977, is affirmed. Accordingly, it is ordered that judgment be entered in favor of Raymond C. Beltz, Jr., and against Pierre Reasner and Pennsylvania National Mutual Casualty Insurance

Company in the amount of $35.33 per week, beginning August 1, 1974 and ending April 3, 1975 and beginning July 3, 1975 and continuing until such time as disability changes in nature or extent or ceases and terminates, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, Pierre Reasner and Pennsylvania National Mutual Casualty Insurance Company are directed to pay the following medical and hospital expenses: to the claimant, $345.20; to Chambersburg Hospital, $942.56.

Pierre Reasner and Pennsylvania National Mutual Casualty Insurance Company are further directed to pay approved attorney's fees of $750 directly to claimant's counsel, Kenneth E. Hankins, Jr., Esquire, from the first lump sum amount due to claimant.