## Haftl v. Allentown Housing Authority

*Steven Robert Waxman,* for plaintiff.
*Oldrich Foucek, III,* for defendant.

DAVISON, *J.,* July 28, 1980—We have before the court for disposition defendant's motion for summary judgment which raises a question of first impression. The action arises from an incident on December 30, 1976 in which plaintiff suffered severe injuries when the sharp edge of a metal cabinet he was holding fell on his left hand.

Pa.R.C.P. 1035(b) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The question presented by defendant's motion is whether at the time of the incident, defendant, Allentown Housing Authority (authority), was plaintiff's "employer" under The Pennsylvania Workmen's Compensation Act[1] and, therefore, immune from tort liability.

"The question of whether an employer-employe relationship exists is one of law based upon findings of fact. [Citation omitted]." Reasner v. Workmen's Compensation Appeal Board, 36 Pa. Commonwealth Ct. 292, 295, 387 A. 2d 679 (1978). The relevant facts in this case are undisputed. At oral argument, plaintiff's counsel asserted that the factual issue to be resolved is the control of Lehigh

---

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1 et seq.

Valley Manpower (Manpower) since plaintiff alleges that Manpower was his employer at the time of the injury. His intended evidence consists of the Comprehensive Employment and Training Act (CETA),[2] CETA regulations and contracts between Manpower and the authority. However, the effect and interpretation of statutes, regulations and/or agreements are clearly questions of law to be decided by the court, not a fact finder. Furthermore, the agreement between the authority and Manpower and the CETA rules, regulations and procedures relevant thereto are incorporated as Exhibits B and C of the sworn affidavit of Paul H. Zimmerman, the executive director of the authority.

We conclude, therefore, that the case is properly the subject of summary judgment and turn to the relevant substantive law.

The Pennsylvania Workmen's Compensation Act provides that the exclusive liability of an employer for injury to an employe is his liability under the act: 77 P.S. §481(a). That the injury here was sustained in the course of plaintiff's employment is not contested. In fact, plaintiff has received workmen's compensation benefits.

The Pennsylvania Workmen's Compensation Act defines employer and employe to be synonymous with master and servant, respectively: 77 P.S. §§21, 22. While each case must be determined on its own facts, certain guidelines exist for determining employer-employe status, which are essentially the same as those at common law for ascertaining the existence of a master-servant relationship, as stated in Frederico Granero Co. v. Workmen's Compensation Appeal Board, 43 Pa. Commonwealth Ct. 308, 310-311, 402 A. 2d 312 (1979):

2. Act of December 28, 1973, 87 Stat. 839, as amended, 29 U.S.C.A. §801 et seq.

"'Control of [the] manner [in which] work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of regular business of the employer, and also the right of employer to terminate the employment at any time. J. Miller Co. v. Mixter, 2 Pa. Commonwealth Ct. 229, 232, 277 A. 2d 867, 869 (1971).'

"This court has held many times that the most important factor in determining the existence of an employer-employee relationship is evidence of actual control or of the right to control the work to be done and the manner of its performance. Workmen's Compensation Appeal Board v. Piccolino, 20 Pa. Commonwealth Ct. 369, 341 A. 2d 922 (1975)."

At the time of the injury here, the authority was a Public Service Employment (PSE) subgrantee under a Federal program authorized by CETA which is administered locally by Lehigh Valley Manpower, a consortium formed by Lehigh County, Northampton County and the City of Allentown for that purpose. The documents which authorize and evidence that subgrant are incorporated into Zimmerman's sworn affidavit as Exhibits A, B and C.

In the fall of 1976 the authority sought to fill a "messenger" position with an individual whose salary would be funded at least in part by the CETA program. In response to that inquiry Manpower referred plaintiff to the authority.

On November 22, 1976 plaintiff was interviewed by an authority employe. Thereafter his application was subjected to all the standard preemployment procedures of the authority. One week later the au-

thority offered, and the plaintiff accepted, employment as a "messenger." Plaintiff worked in that capacity until December 30, 1976, the date of his injury.

Manpower had no control over whether the authority hired plaintiff. During the period from November 29 to December 30, 1976, plaintiff reported daily to authority facilities, received work assignments from authority personnel and completed those assignments using authority equipment. Manpower's sole involvement was the payment of his salary and fringe benefits with funds allocated by the CETA program. Plaintiff's own deposition confirms that exclusive control of the work and the manner of its performance was vested in the authority.

Under the general provisions governing PSE subgrants, PSE employes are to be considered employed by the subgrantee and subject to the personnel policies thereof. Therefore, control over termination of plaintiff's employment was vested in the authority, which did, in fact, exercise that authority after the injury.

Legislation mandates that all PSE employes be provided workers' compensation: 29 U.S.C.A. §824(k). However, the statute does not specify what entity is required to provide the coverage.[3] Nor does the provision that requires workmen's compensation in the "assurances and certifications" by an applicant for Federal CETA funds indicate who is to be the provider thereof. Plaintiff applied for and

3. At least one court has held that the subgrantee employer was responsible for workmen's compensation liabilty. See City of Franklin v. Department for Human Resources, 581 S.W. 2d 358 (Ky. App. 1979).

received workmen's compensation benefits through Manpower and its carrier.

Plaintiff further relies on various CETA provisions for his claim that Manpower was his employer, specifically 29 U.S.C.A. §§824(a), 824(h)(1), 824(h)(2), 824(k), and 826, and Regional Field Instruction CETA No. 63-76. These provisions establish (1) a residence requirement for PSE eligibility, (2) wage guidelines, (3) a time limit on PSE eligibility (78 weeks in a 5-year period), (4) a requirement that PSE employes receive the same benefits as other employes and (5) a nonpositive status termination for refusal to accept suitable unsubsidized employment alternatives. Most of these regulations relate to the purposes of CETA, to provide job training and temporary employment opportunities. None of the regulations affect the crucial question of control of the work and its manner of performance.

Whether a CETA prime sponsor (Manpower) or its subgrantee (authority) is the employer of a PSE employe appears to be a question of first impression in this Commonwealth. The issue, however, is similar to that raised in English v. Lehigh County Authority, No. 221 September Term, 1974, and its companion case, English v. A. L. Weisenberger Associates, Inc., No. 544 April Term, 1975 (C.P. Lehigh, filed July 18, 1979), wherein, in a comprehensive opinion, our colleague, The Honorable David E. Mellenberg, granted a motion for summary judgment by a customer of a firm which provided temporary labor, holding that the former, not the latter, was plaintiff's employer at the time of his death.

While the Michigan test of "economic reality," which permits the courts to find both a special and

general employer immune from tort liability, is appealing, we agree with Judge Mellenberg that there is no basis for that approach in the statutory or decisional law of Pennsylvania.

The most critical factor in determining employer status is the right to control the work to be done and the manner of its performance. For the reasons herein, we hold that the authority, and not Lehigh Valley Manpower, was plaintiff's employer at the time of his injury. The budgetary and regulatory control authorized by CETA and vested, in part, in Manpower are minimal and too indirect to negate that conclusion.

Public policy supports the result we reach. The purpose of workers' compensation is to provide efficient payment to those who suffer injury in the course of their employment in return for the employer's immunity to a suit in tort. That objective has been achieved in this case.

We are obliged to grant the authority's motion.

## ORDER

Now, July 28, 1980, after oral argument and consideration of the record and the briefs of counsel, and for the reasons set forth in the accompanying opinion, it is ordered that the motion for summary judgment of defendant, Allentown Housing Authority, be and the same is hereby granted.