**JOYCE, Mary and Joyce, Michael, h/w,**

v.

**SUPER FRESH FOOD MARKETS, INC.**

**Appeal of Mary and Michael JOYCE, Appellants.**

**No. 86–1463.**

United States Court of Appeals, Third Circuit.

Argued Feb. 25, 1987.

Decided April 9, 1987.

As Amended May 5, 1987.

Rehearing and Rehearing In Banc Denied May 8, 1987.

---

Joseph Lurie (argued), Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellants.

Charles W. Craven (argued), Christine M. Mooney, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for defendant.

Before WEIS, BECKER, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellants, Mary and Michael Joyce, appeal from an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment to appellee, Super Fresh Food Markets, Inc. ("Super Fresh"). This negligence action originated in the Court of Common Pleas for the County of Philadelphia, Pennsylvania, and was removed on Super Fresh's motion to federal district court on the basis of diversity of citizenship. The district court held that Mary Joyce was an employee of Super Fresh at the time the relevant events transpired, and, therefore, the Pennsylvania Workmen's Compensation Act, 77 Pa.Stat.Ann. §§ 1 *et seq.* (Purdon 1952) provided Joyce with her exclusive remedy. *Joyce v. Super Fresh Food Markets, Inc.*, 640 F.Supp. 721, 725 (E.D.Pa. 1986). Because we believe that there are genuine issues of material fact concerning the relationship between Joyce and Super Fresh, we will reverse the order of the district court and remand the case for trial.

In August 1982, Super Market Services, Inc. ("SMS") hired Mary Joyce to work in the Super Fresh market located in Levittown, Pennsylvania.[1] Super Fresh and SMS are both wholly owned subsidiaries of the Great Atlantic & Pacific Tea Company ("A & P"). SMS supplies health and beauty products as well as other merchandise to Super Fresh, A & P, and other stores incorporated under the A & P banner. A & P created SMS for labor and tax reasons. Joyce and other SMS employees are non-

---

1. It is somewhat unclear whether Joyce was hired by SMS or its wholly owned subsidiary, Kwick Save, Inc. For the purposes of this litigation, however, it makes no difference whether Kwick Save or SMS was the actual hiring party.

union; whereas, wage-earners employed by Super Fresh are covered by a collective bargaining agreement with the United Food and Commercial Workers International Union.

Though Joyce was hired by SMS, she worked exclusively in the Super Fresh Levittown store. However, at work she wore an SMS uniform and badge, and her duties were confined to shelving and creating displays for SMS products.

On October 6, 1983, Joyce was performing her duties in the Levittown store. While she was transferring merchandise from shipping boxes to a cart, a large wooden pallet fell and struck Joyce on the leg and foot. As a result, she sustained serious injury, and this lawsuit ensued.

On the day of trial, the district judge held a pre-trial conference during which the attorneys for Super Fresh submitted a motion for summary judgment. Joyce's attorney objected to any consideration of the motion until he had an opportunity to study it and reply. The trial judge did not rule on the motion at that time and apparently represented to the parties that he would treat the motion and supporting brief as a trial brief. Indeed, there is no entry on the docket sheet indicating that a motion for summary judgment was filed.

The judge also stated at the pre-trial conference that he would trifurcate the trial, and that the first issue to be tried would be whether Joyce was an employee of Super Fresh. Despite the fact that Joyce's attorney made a jury demand, the judge went on to rule that the first issue would be tried without a jury.

A few days after testimony was taken on the issue of Joyce's employment status, the trial judge, to the surprise of Joyce's attorney, entered an opinion and order granting summary judgment to Super Fresh on the ground that the suit was barred by the Pennsylvania Workmen's Compensation Act. It is from this order that the present appeal was taken. We have jurisdiction under 28 U.S.C. § 1291 (1982).

Appellant attacks the district court's order on two grounds. First, she claims that summary judgment was entered in violation of Fed.R.Civ.P. 56(c) which requires summary judgment motions to "be served at least 10 days before the time fixed for the hearing." Second, appellant argues that there remains various genuine issues of material fact, and therefore the case is not ripe for summary judgment. Because we agree with appellant's second assertion, we need not and will not address the first.

The district court found two bases for concluding that the Workmen's Compensation Act bars the appellant from recovering in negligence. First, the district court found that Super Fresh was Joyce's actual employer and therefore was immune from suit under the exclusivity provision of the Act. *see* 77 Pa.Stat.Ann. § 481 (Purdon 1952) and 77 Pa.Stat.Ann. § 21 (Purdon 1952). Second, the court noted that A & P had incurred all the costs of Joyce's workmen's compensation benefits; thus, even if SMS was Joyce's actual employer, it would be appropriate to "pierce the corporate veil" and grant immunity to all subsidiaries of A & P. We will examine the latter basis first.

■ The district court cited no authority for its conclusion that sibling corporations should be treated as a single employer for purposes of workmen's compensation, and Pennsylvania authority indicates that such unitary treatment is disfavored. In *Mohan v. Publicker Industries, Inc.*, 422 Pa. 588, 222 A.2d 876 (1966), for instance, the Pennsylvania Supreme Court clearly stated that a parent corporation and its wholly owned subsidiary are separate entities for purposes of workmen's compensation. Similarly, in *Butera v. Western Ice & Utilities Co.*, 140 Pa.Super. 329, 333, 14 A.2d 219, 221 (1940), the Superior Court said of two corporations with common stockholders and common management, "As to their relations to an employee under the compensation law each corporation must be regarded as a separate entity and the labor performed by a workman for one of them cannot be cumulated with an agreement to perform services for the other...." While neither *Mohan* nor *Butera* involved two wholly owned subsidiaries of a parent corporation, we can think of no reason why the logic of these cases should not apply with full force here. The district court's

rationale for piercing the corporate veil was that A & P would otherwise ultimately bear the double burden of a workmen's compensation award and of any adverse tort judgment. However, under *Mohan,* this would not seem to provide a sufficient reason for piercing the corporate veil. Nor can we say that leaving the corporate veil intact would work any injustice. A & P chose to construct a complex corporate family structure. Super Fresh and SMS were incorporated under different charters in different states. They have separate management and are held out to the public and their employees as separate entities. This structure has afforded the A & P family various tax and labor advantages. Notably, this corporate configuration has allowed the family to keep part of its workforce—the part of which appellant was a member—non-union. While we certainly do not begrudge the A & P family these fruits, we will not sympathetically listen as they complain of the other consequences. Piercing the corporate veil is appropriate when "the court must prevent fraud, illegality or injustice or when recognition of the corporate entity would defeat public policy...." *Zubik v. Zubik,* 384, F.2d 267 (3rd Cir.1967) cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Here, we see no reason to raze the walls which A & P so carefully built.

Having rejected the district court's conclusion that Super Fresh and SMS should be viewed as a single entity, we now must decide whether the district court correctly granted summary judgment on the basis of Super Fresh's assertion that it was Joyce's actual employer. Joyce claims, of course, that SMS was her employer and that her papers and pleadings raise genuine issues of material fact on the matter, and therefore the district court erred in granting summary judgment. We agree.

In determining which of two affiliated corporations is the employer of a particular employee, a court must ask which corporation has the right to control the work to be done by the employee and the manner of performing it. *Mohan,* 422 Pa. at 591, 222 A.2d at 879. Thus, the test is the same as the one used when determining whether a general or a special employer is responsible for the workmen's compensation of a "borrowed servant." *See English v. Lehigh County Auth.,* 286 Pa.Super. 312, 322–23, 428 A.2d 1343, 1349 (1981) and cases cited therein. However, when two affiliated corporations are involved, the *Mohan* case instructs us to begin our inquiry with "a consideration of the functions performed by every interested party—each corporation and the injured employee...." *Mohan,* 422 Pa. at 592, 93, 222 A.2d at 879. In *Mohan,* the issue was whether the plaintiff's decedent was an employee of a parent corporation or of its wholly owned subsidiary. The parent corporation was in the business of producing industrial alcohol and chemicals; whereas, the subsidiary produced whiskey intended for human consumption. The plaintiff's decedent worked in the subsidiary's plant. She was carried to her death while working on a whiskey crating machine owned by the subsidiary. The Supreme Court of Pennsylvania ruled, that without regard to any other indicia of control, the plaintiff's decedent must be regarded as an employee of the subsidiary because her job was in furtherance of a function of the subsidiary. *Id.* at 593, 222 A.2d at 879. Unfortunately, a functional analysis does not provide a clear-cut answer in this case. The function of SMS is to supply various products to Super Fresh and other A & P affiliated stores. The function of Super Fresh is to retail various products supplied by SMS and other wholesalers.[2] Joyce's

---

**2.** After citing to *Mohan,* the district court offered the following functional analysis:

It is undisputed that SMS was created for labor and tax considerations as a support organization for food stores of the parent corporation, A & P, and other subsidiary corporations of the parent. It is also undisputed that the primary duty of a Super Fresh store manager is to insure that his store is operated at a

profit, and that the manager is responsible for all aspects of the store operation. Consequently, he has broad discretion in making decisions which affect the profitability of the store.

*Joyce,* 640 F.Supp. at 724. We do not believe that it is helpful to observe that the function of Super Fresh is to "make a profit," nor do we believe that, in *Mohan,* the Pennsylvania Su-

job entailed placing SMS products on Super Fresh's shelves. Thus, Joyce's job may be seen as the last leg in SMS's endeavor to supply Super Fresh with merchandise. In this respect Joyce's function was not dissimilar to that of a deliveryperson for a soft drink distributor or other wholesaler. Putting another light on the matter, however, one could observe that shelving products and creating displays are vital functions in any large retail business. Thus, in performing her job, Joyce certainly furthered Super Fresh's primary mission. In short, a functional analysis is of little aid in our query.

■ We therefore turn to other indicia of the right to control. In determining which of two employers possesses the right to control an employee, Pennsylvania courts have looked at several factors including which party has the right to hire and the right to fire,[3] *Walters v. Kaufmann Department Stores,* 334 Pa. 233, 236, 5 A.2d 559, 560 (1939), which party has the obligation to pay wages, *Sweet v. Pennsylvania Labor Relations Rd.,* 457 Pa. 456, 462, 322 A.2d 362, 365 (1974), which party supplies the employee with the tools of her job, *Mohan,* 422 Pa. at 591, 222 A.2d at 878, and to which party the employee normally reports, *Walters,* 334 Pa. at 237, 5 A.2d at 560. In deciding whether Super Fresh was the employer at the time of the accident "any discrepancies in the facts would be for a jury to resolve; however, whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law." *English,* 286 Pa.Super. at 322, 428 A.2d at 1348. Thus, the key question on our review of the district court's grant of summary judgment is whether there are material discrepancies in the record as to the existence *vel non* of the factors listed above.

The district court found that Super Fresh "clearly" has the right to hire SMS employees such as Joyce. We find the record equivocal on the matter. Both Joyce and her coworker, Betty Dutton, testified that they were hired by Bob Mills, an employee of SMS, after filling out applications that contained the SMS logo. However, Mr. Timothy Courtney, the Vice-President of Taxes of A & P, testified that though prospective SMS employees are initially interviewed by SMS officers, the manager of the Super Fresh store in which the prospective employee is to work has the final word in the hiring decision. Courtney's testimony was corroborated by John Williams, the manager of the Super Fresh store in which Joyce worked. Williams stated that he personally interviewed Joyce and upon his recommendation Joyce was formally hired by Mills.[4] This testimony, however, is inconsistent with that of Joyce. Both at trial and in deposition, Joyce indicated that she was interviewed only by Mills and other SMS employees. Further, she stated that during this one interview, she was given an on-the-spot offer of employment. Assuming, as we must on review of a grant of summary judgment, that the appellant's

preme Court contemplated that a corporation's function should be so expansively described. However, since we do not base our decision on a functional analysis, we will not dwell on this matter.

3. The district court, relying on *Mauk v. Wright,* 367 F.Supp. 961 (M.D.Pa.1973), indicated that the right to select and the right to remove are elements which must be proven in addition to the right to control in order to establish an employer-employee relationship. It is true that some cases indicate that the rights to select, remove, and control are three separate elements which must be proven in order to establish a master-servant relationship for purposes of making a claim on a theory of respondeat superior. *See, e.g., Mauk,* 367 F.Supp. at 967; *McColligan v. Pennsylvania Ry. Co.,* 214 Pa. 229, 63 A.2d 792 (1906). This three part test has been used in certain other contexts. *See Sweet v. Pennsylvania Labor Relations Rd.,* 457 Pa. 456, 322 A.2d 362 (1974) (three part test used in establishing labor bargaining unit). However, in determining which of two employers is entitled to immunity under the Workmen's Compensation Act, Pennsylvania courts use a one part "right to control" test. *See English,* 286 Pa.Super. at 322, 428 A.2d at 1349. Nonetheless, in the Workmen's Compensation context, the rights to select and remove may be considered as indicia of the right to control. *See Walters,* 334 Pa. at 236, 5 A.2d at 560.

4. This trial testimony is apparently contradicted by Williams' own deposition testimony in which he indicated that neither Mills nor any other SMS officer participated in hiring Joyce.

version is correct, we must conclude that no Super Fresh officer was even consulted as to the decision to hire Joyce. The district court's finding on this matter was, therefore, in error.

The district court also found that Super Fresh "clearly" has the right to remove SMS employees. Again, we find evidence to the contrary in the record, and we must conclude that the district court engaged in fact-finding that is impermissible when ruling on a motion for summary judgment. Williams, the Super Fresh store manager, admitted that the power to fire Joyce rested with Joanne Nice, a SMS supervisor.[5] At the trial, Williams stated, however, that he had the power to suspend Joyce and other SMS employees, but even this latter testimony is refuted by Williams' own deposition testimony indicating that if a disciplinary problem arose with an SMS employee, then Nice would be called in to handle it. In sum, there is little evidence supporting the district court's conclusion that Super Fresh had the power to fire Joyce, and what little evidence exists is certainly controverted in the record.

As to the obligation to pay wages, the district court noted "that all employees be they SMS or Super Fresh, received their pay or salary from funds drawn on the A & P payroll system." 640 F.Supp. at 723. While it may be true that A & P managed the payrolls for all A & P subsidiaries, Super Fresh's position is not strengthened by virtue of the fact. *See Mohan*, 422 Pa. at 591, 222 A.2d at 878 (fact that parent managed payroll of subsidiary is irrelevant). As stated earlier, it is not appropriate to pierce the corporate veil in this case; therefore, the fact that A & P managed SMS's payroll is not at all probative on the question whether *Super Fresh* may be considered as Joyce's employer. Further, the district court's payroll analysis obscures the uncontradicted fact that Joyce's paychecks bore the insignia of SMS (or Kwick Save; *see* note 1, *supra*). The district court also failed to mention that Super Fresh paychecks and SMS paychecks are

distributed in completely different manners. Joyce and other employees getting SMS paychecks receive checks at their homes; whereas, Super Fresh paychecks are distributed on the store premises.

The district court apparently did not consider which party supplied Joyce with the tools of her job. While this indicium of control is often given special prominence in Pennsylvania cases, *see id., Reasner v. Workmen's Compensation Appeal Board,* 36 Pa. Commw. 292, 387 A.2d 679 (1978); *Biter v. Department of Labor and Indus.,* 39 Pa.Commw. 391, 395 A.2d 669 (1978), the district court's omission is not critical. What little evidence exists on this subject indicates that both SMS and Super Fresh supplied Joyce with her tools; thus, this factor provides little guidance in this case.

Finally, the district court stated, "It is undisputed that SMS employees, such as Joyce, reported on a daily basis to the store manager for direction as to the performance of their duties." 640 F.Supp. at 724. We find no record support for this conclusion. Indeed, Williams testified that he did not even know that Joyce had reported to work on the day of her injury. He further stated that it is not within the store manager's duties to supervise employees on a day-to-day basis, and that the only instructions he ever gave to SMS employees were where to build special displays; however, he often gave similar instructions to deliverypersons for independent vendors such as Tasty Cake, Pepsi Cola, and Entenmann's. Williams also admitted that he did not have the power to set Joyce's work hours and that SMS employees "more or less set ... their own schedules." In addition, Joyce testified that her supervisor was Nice of SMS, and that she was instructed to be polite and respectful to the Super Fresh manager but not to take orders from him. Joyce further said that she received all of her training from SMS employees. In short, there is little evidence in support of the district court's finding that Joyce normally reported to the Super Fresh

---

**5.** In his trial testimony, Williams claimed that he could dismiss an SMS employee only if he

caught the employee stealing.

store manager, and certainly it was incorrect for the court to make such a finding in the context of a motion for summary judgment.

As the foregoing discussion indicates, the district court made various findings concerning key indicia of control that were either erroneous or controverted in the record. Accordingly, we will reverse the order granting summary judgment and remand the case for trial so that the factual controversies may be resolved by a jury.