John T. LANGDON, Insurance Commissioner of the State of Wyoming and the Insurance Department of the State of Wyoming, Appellants (Respondents),

v.

LUTHERAN BROTHERHOOD, a Minnesota Corporation, Appellee (Petitioner).

No. 5324.

Supreme Court of Wyoming.

March 20, 1981.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division and Walter Perry, III, Asst. Atty. Gen., Cheyenne, for appellants.

Glenn Parker and W. Douglas Hickey of Hirst & Applegate, Cheyenne, for appellee.

Before ROSE, C. J.*, and McCLINTOCK, RAPER**, THOMAS and ROONEY, JJ.

McCLINTOCK, Justice.

The sole question for consideration upon appeal is whether appellee, a fraternal benefit society, has exceeded its corporate powers that have been granted by statute. The district court concluded that the insurance commissioner's order revoking appellee's license to transact business in Wyoming as a fraternal benefit society was arbitrary and capricious and not in accordance with the law, and set the order of the commissioner aside. We agree with the district court's determination and will affirm.

Lutheran Brotherhood, appellee, is a fraternal benefit society that was originally organized and operated under the laws of Minnesota in 1917. Since that date, Lutheran Brotherhood has also been licensed in the District of Columbia and all of the states, including Wyoming. As of December 1978, Lutheran Brotherhood has assets amounting to $1.375 billion. During the past year, its members have donated 8 million hours of time and there have been approximately 47,000 acts of service. Included in these services are continuing education for Lutheran ministers, extension programs for newly founded missions, film libraries, matching gifts to Lutheran colleges and bible schools, orphan benefits, student loans, and student scholarships. Lutheran Brotherhood also provides life and health insurance for its members.

In 1969, Lutheran Brotherhood's management entered into an agreement to co-sponsor the sale of mutual funds with Federated Investors, Inc., of Pittsburgh, Pennsylvania. Lutheran Brotherhood invested one million

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

dollars in each of the five mutual funds and Federated Investors provided legal advice. Each of these mutual funds is registered under the Federal Investment Company Act of 1940 and each is a Maryland corporation.

According to Lutheran Brotherhood, sponsorship of five mutual funds was undertaken in part to further several of its corporate purposes, which are " '. . . to encourage . . . savings, [and] thrift . . . on the part of its members,' " thereby giving its members the opportunity to invest in blue ribbon stock so that its members would have the opportunity to participate financially in our economy and to help them combat inflation. Another reason given for the sponsorship of the five mutual funds was to create an investment for Lutheran Brotherhood. Lutheran Brotherhood did invest funds in two subsidiary corporations known as Lutheran Brotherhood Securities Corporation (LBSC) and Lutheran Brotherhood Research Corporation (LBRC).

Lutheran Brotherhood could not qualify, under the Federal Securities and Exchange Regulation, Rule 15c(3)1(b)3, as a broker/dealer for the mutual funds; therefore, Lutheran Brotherhood was required to have a separate broker/dealer corporation. In 1970, Lutheran Brotherhood purchased 51% of the voting stock in a corporation that was and is presently a registered broker/dealer under the Federal Securities Exchange Act of 1934. This corporation was organized and owned by Federated Investors, Inc. Federated Investors still retains the remaining voting stock in this corporation and the corporation is presently called Lutheran Brotherhood Securities Corporation, hereinafter referred to as LBSC.

In addition, Lutheran Brotherhood also purchased 100% of the stock in a corporation organized by Federated Investors to provide investment advice for mutual funds. After the purchase of the stock, the name of this corporation was changed to Lutheran Brotherhood Research Corporation, hereinafter referred to as LBRC. LBRC is registered under the Federal Investors Advisors Act of 1940 and it provides advice to the five mutual funds that were sponsored by Lutheran Brotherhood. LBSC and LBRC are separate corporate entities and they are also fully taxable corporations.

The mutual funds are sold by salespersons who are also Lutheran Brotherhood district representatives. These salespersons are licensed under the Federal Securities Exchange Act of 1934 and the respective state securities laws, including that of Wyoming. When a Lutheran Brotherhood member purchases shares in a mutual fund, LBSC pays the salesperson 50% of the sales charge. The member is responsible for paying the sale charge. On the other hand, if the representative sells insurance to a Lutheran Brotherhood member he receives his compensation from Lutheran Brotherhood.

In a Notice to Correct Deficiencies, the Wyoming Insurance Commissioner informed the Lutheran Brotherhood that it must divest itself of its mutual fund business in order to comply with Chapter 34 of the Insurance Code. After a hearing was held, the commissioner found that Lutheran Brotherhood was engaged in the business of mutual funds through its subsidiaries, LBSC and LBRC, and that such activity was not permissible under the laws of Wyoming. Therefore, the commissioner revoked Lutheran Brotherhood's license to transact business in the State of Wyoming as a fraternal benefit society.

Upon appeal to the district court, the commissioner's order was set aside.

Appellants contend that the present appeal presents two questions: one of fact and one of law. We cannot agree. Here, there is no dispute as to the facts. Therefore, the resolution of the questions presented during the hearing and upon appeal requires conclusions of law.

First, we must determine whether the insurance commissioner was correct when he concluded that appellee's investments in LBSC and LBRC do not qualify as investments under the Minnesota Insurance Code. This issue can be resolved only by interpreting the applicable statutory provisions.

Appellants argue that this court must give deference to the commissioner's interpretation of the applicable statutes. While we agree that this court must give deference to an interpretation given to a statute by a commissioner charged with the agency's administration, *Department of Revenue v. Puget Sound Power & Light Company*, Mont., 587 P.2d 1282, 1286 (1978), it is ultimately for this court to construe the meaning of a statute, even if that interpretation is contrary to that of the commissioner. *Hearst Corporation v. Hoppe*, 90 Wash.2d 123, 580 P.2d 246, 250 (1978).

In the State of Wyoming, the licensing of a fraternal benefit society is governed by Chapter 34 of the Wyoming Insurance Code, § 26–34–101, et seq., W.S.1977. Section 26–34–133, provides that a foreign society may invest in such investments as are permitted by the state in which the society is incorporated. As stated in § 26–34–133:

"... Any foreign or alien society permitted or seeking to do business in this state which invests its funds in accordance with the laws of the state, district, territory, country or province in which it is incorporated, shall be held to meet the requirement of this section for the investment of funds."

Because appellee is a foreign society that is incorporated under the laws of Minnesota, we must look to the laws of Minnesota in order to determine whether appellee has invested its funds in a permissible manner. Minnesota Statutes 1978, § 64A.39(3), provides that any fraternal society may make

"[s]uch investments, including real estate holdings, as are permitted by the laws of this state for the investment of assets of life insurance companies, and subject to the limitations thereon."

The Minnesota Statutes 1978, § 61A.281, concerning the investment of assets of life insurance companies provides in pertinent part:

"A domestic life insurance company may organize and hold, or acquire and hold, more than 50 percent of the capital stock of any corporation organized under the laws of the United States or any state thereof, or the Dominion of Canada or any province thereof, or if approved by the commissioner, elsewhere, which is one or more of the following: (1) a corporation providing investment advisory, management or sales service to an investment company or to an insurance company; ... The limits contained in the other investment sections of the insurance code shall not apply to such holdings, provided that the aggregate cost of the investments made under this subdivision shall not exceed five percent of the domestic life insurance company's admitted assets."

A fraternal benefit society in Minnesota is, therefore, allowed to purchase more than 50% of the capital stock in a company that provides investment advice, management or sales service to an investment company. That is exactly what Lutheran Brotherhood has done in the case at bar. As we discussed earlier, Lutheran Brotherhood owns 51% of the stock in Lutheran Brotherhood Securities Corporation and this corporation provides the management and sales service for the five mutual funds. Lutheran Brotherhood owns 100% of the stock in Lutheran Brotherhood Research Corporation and this corporation provides investment advice for the five mutual funds.

While we agree with appellants that a fraternal benefit society is an organization of limited powers, we do not agree that appellee's investments are impermissible. The purchases of the stocks in LBSC and LBRC are investments made and held in accordance with the law of Minnesota. Therefore, we cannot agree with the insurance commissioner that the investments made by the appellee amount to an impermissible exercise of power.

The final question is whether Lutheran Brotherhood is participating in an *ultra vires* act by co-sponsoring the sale of mutual funds. We begin with the fundamental rule of law that recognizes that ordinarily a corporation is an entity that is distinct from its shareholders. *State ex rel.*

*Christensen v. Nuggett Coal Company*, 60 Wyo. 51, 144 P.2d 944, 948 (1944); and 1 Fletcher, Cyclopedia Corporations (1974 Rev.Vol.) § 25, p. 99. Courts will not disregard the corporate entity unless this "entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime." 1 Fletcher, Cyclopedia Corporations, supra, § 41, p. 166, cited with approval in *State ex rel. Christensen v. Nuggett Coal Company*, supra. Furthermore, a corporate entity will be closely reviewed by a court if it appears that the corporation was set up to evade a statutory or constitutional duty. *State ex rel. Christensen v. Nuggett Coal Company*, supra, 144 P.2d at 949.

■ The undisputed facts, as discussed earlier, are that the mutual funds shares in question are sold by salespersons who are paid a commission by LBSC. LBRC provides investment advice to LBSC. Both corporations are fully taxable. LBSC is a registered broker/dealer under the Wyoming Securities Act and the Federal Securities Exchange Act of 1934. LBRC is registered under the Federal Investors Advisors Act of 1940.

While appellants agree that these corporations appear to be independent corporations, they argue in essence that this court should pierce the corporate veil because the Wyoming statutes do not allow a fraternal benefit society to offer mutual funds to its members. We must, therefore, look to the pertinent statutes.

Section 26–34–101(a), W.S.1977, defines a fraternal benefit society in the following manner:

> "Any incorporated society, order or supreme lodge, . . . conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which makes provision for the payment of benefits in accordance with this chapter is hereby declared to be a fraternal benefit society."

Section 26–34–104(a)(i)(B), W.S.1977, provides that the society's articles of incorporation shall provide:

> "The purposes for which it is being formed and the mode in which its corporate powers are to be exercised. Such purposes shall not include more liberal powers than are granted by this chapter, provided that any lawful, social, intellectual, educational, charitable, benevolent, moral, fraternal or religious advantages may be set forth among the purposes of the society; . . ."

Section 26–34–104(a)(vi), W.S.1977, provides:

> "(vi) Constitution and Laws.—Every society shall have the power to adopt a constitution and laws for the government of the society, the admission of its members, the management of its affairs and the fixing and readjusting of the rates of its members from time to time. It shall have the power to change, alter, add to or amend such constitution and laws and *shall have such other powers as are necessary and incidental to carrying into effect the objects and purposes of the society.*" (Emphasis added.)

The statutes also specifically provide that a fraternal benefit society may "create, maintain and operate charitable, benevolent or educational institutions for the benefit of its members . . .", § 26–34–112(a), W.S. 1977, and that the society may offer specifically enumerated forms of insurance benefits to its members, § 26–34–114, W.S.1977.

■ While we agree with appellants that a fraternal benefit society is an organization of limited powers, § 26–34–104, supra, we cannot agree that a fraternal benefit society is exceeding its limited powers by offering mutual funds to its members. We find no indication whatever that its solvency or integrity as an insurer has in any way been jeopardized, and there is no showing that it is avoiding payment of proper taxes. We agree with appellee's contention that the insurance commissioner has erroneously concluded that Chapter 34 restricts a fraternal benefit society from offering to its members any financial benefit other than the insurance benefits as enumerated in Chapter 34. While it is true that a frater-

nal benefit society may offer only the specific type of insurance benefits that are enumerated in Chapter 34, this limitation does not prevent the society from providing other financial benefits. As we have already noted, § 26–34–104(a)(i)(B) and (a)(vi) specifically provide that a fraternal benefit society may engage in any lawful activity that is not for profit and that is necessary to carry out the purposes of the society.

By offering mutual funds to its members, Lutheran Brotherhood is carrying out its purposes and objectives as a fraternal benefit society. Article I of appellee's Articles of Incorporation provides that the society was formed in part " ' ... to encourage industry, savings, thrift, and development on the part of its members.' " In addition, Lutheran Brotherhood does not directly profit from the sale of the mutual funds because it does not directly receive part of the sales charge when mutual funds are sold, but, rather, it receives or should receive dividends on the stock from the two corporations, LBSC and LBRC. Therefore, we cannot agree with the commissioner's conclusion.

Affirmed.