Argued and submitted November 9, 1984, affirmed as to attorney fees; otherwise reversed and referee's order reinstated; affirmed on cross-petition April 10, 1985

In the Matter of the Compensation of
Ivy E. Miller, Claimant.

MISSION INSURANCE CO.,
*Petitioner - Cross-Respondent,*

*v.*

MILLER,
*Respondent - Cross-Petitioner,*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent - Cross-Respondent.*

(82-04811, 82-10905; CA A30742)

697 P2d 1382

Marianne Bottini, Portland, argued the cause for petitioner - cross-respondent. On the brief were Bruce A. Bottini, and Bottini & Bottini, Portland.

Richard T. Kropp, Albany, argued the cause for respondent - cross-petitioner Miller. With him on the brief was Emmons, Kyle, Kropp, Kryger & Alexander, P. C., Albany.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent - cross-respondent SAIF. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Mission Insurance Company (Mission), as workers' compensation insurer for Action Ambulance, Inc. (Action Ambulance), seeks review of a Board order which held that Action Ambulance is solely responsible for claimant's compensable injury. On *de novo* review, we reverse, except as to the award of attorney fees.

The issue is the responsibility of two part-time employers for claimant's compensable injury. The facts are not disputed. Action Ambulance and Action Welding, Inc. (Action Welding) are separate companies, each owned equally by Ray Moore and Edith Moore. Action Welding was formed to supply oxygen and other medical supplies to Action Ambulance and other customers. The books of Action Welding were kept separately, and assets were separately owned. The two corporations used the same office space, warehouse, bookkeeper and manager. They shared one telephone, with three lines.

In June, 1980, claimant began working for Action Ambulance as a part-time ambulance driver. In October, 1980, he began working part-time as a delivery truck driver for Action Welding. The two jobs totalled 40 hours per week. At the time of the injury, claimant earned $200 per month from Action Ambulance and $700 per month from Action Welding. He worked primarily for Action Ambulance on Tuesdays and Fridays, and primarily for Action Welding on Mondays, Wednesdays and Thursdays. However, the record indicates that, despite claimant's primary assignment to one company on certain days, he was always available and "on call" for the other, as needed. He performed services for each company on all days, taking the jobs with the greater priority. For example, while driving the Action Welding delivery truck, he was always on call for the ambulance, wore his ambulance uniform and carried ambulance equipment with him.

In the fall of 1981, the companies encountered financial difficulties and the bank assumed *de facto* receivership, consolidating the funds of both companies into the Action Ambulance account. All checks were written on the Action Ambulance account, with the exception of one vacation pay check to claimant dated December 15, 1981. Action Welding's coverage with SAIF was terminated on October 1, 1981, for

nonpayment of premiums. The company did not acquire a replacement policy. Action Ambulance retained its coverage through Mission.

On Friday, December 18, 1981, claimant was working primarily for Action Ambulance when he received an urgent call from an Action Welding customer for a tank of oxygen. He was not needed on the ambulance and decided to deliver the oxygen. In loading the oxygen into the Action Welding truck, he ruptured a disk in his low back.

Mission initially accepted the claim and paid it as if claimant were fully employed by Action Ambulance. Later, Mission notified claimant that it was reducing claimant's benefits to the level of a part-time employe. At a hearing on the matter, SAIF represented Action Welding as a non-complying employer.

The referee held that Action Ambulance and Action Welding were "joint" employers, equally responsible for claimant's injury. Mission was ordered to pay benefits based on full-time employment, and SAIF was ordered to reimburse Mission for 50 percent of the expenses. The Board reversed, holding that Action Ambulance was the only employer.

■ Mission argues that Action Welding is the sole responsible employer, because claimant was performing an Action Welding task at the time of the injury. In the alternative, Mission argues that Action Welding and Action Ambulance were "dual" employers and responsible for the injury in proportion to the salary paid by each. We conclude that Action Ambulance and Action Welding were joint employers, jointly responsible for claimant's injury.

This court has recognized that it is possible for an employe to have two employers for the purposes of workers' compensation. *Robinson v. Omark Industries, Inc.,* 46 Or App 263, 611 P2d 665 (1980). In resolving responsibility disputes between two or more employers, the classifications of "dual" and "joint" employment are useful. The two terms are aptly described in 1C Larson, Workmen's Compensation Law, § 48.40 (1982):

> "Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both

employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation.

"Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury."

A joint employe is subject to the simultaneous control of two employers and performs simultaneous and related services for each. Dual employment is characterized by separate control and separate performance of unrelated services.

In this case, the owners and managers of Action Ambulance and Action Welding are the same, and claimant was subject to their simultaneous control. Claimant performed services for the companies simultaneously, in the sense that, even if claimant was working primarily for one employer, he was always on call for the other, as needed. Both companies benefited from claimant's unique "on call" status and from his availability to perform priority tasks. That, more than any other factor, leads us to conclude that claimant was a joint employe.

In concluding that Action Ambulance was the only employer, the Board apparently relied on the fact that the payrolls of both corporations were drawn on the Action Ambulance account. We do not find that factor to be controlling, however. The use of one bank account was required by the bank. The consolidation of accounts did not result in a dissolution of Action Welding or the merger of the two companies. They remained separate legal entities and were functioning as such at the time of the injury. Both are therefore fully responsible.

■ Petitioner raises as error the Board's award of attorney fees to claimant for services performed before the Board on review. It is clear that claimant is entitled to attorney fees under the provisions of ORS 656.386(1) for successfully defending his award of compensation as a full-time employe.

Claimant has cross-petitioned, prompted by his concern that he be compensated as a full-time employe in the event that the court treats this case as a dual employment situation. Our holding inherently provides for the result sought by claimant.

We reinstate the referee's determination that Action Welding and Action Ambulance are jointly liable for claimant's compensable injury. Mission is to pay claimant's benefits and temporary total disability at the rate computed on the basis of claimant's combined salary from Action Ambulance and Action Welding. SAIF shall reimburse Mission for 50 percent of its expenses.

On petition, affirmed as to attorney fees; otherwise reversed and referee's order reinstated; affirmed on cross-petition.