William W. STRATMAN, as Administrator of the Estate of Kathy Ann Stratman, Appellant (Plaintiff),

v.

ADMIRAL BEVERAGE CORPORATION and Fremont Beverages, Inc., Appellees (Defendants),

Crown Cork and Seal Co., Inc., a New York corporation and Continental Can Company, Inc., (Defendants).

No. 87–247.

Supreme Court of Wyoming.

Aug. 24, 1988.

Rehearing Denied Sept. 20, 1988.

Terry J. Harris of Southeast Wyoming Law Offices, Cheyenne, for appellant.

Patrick R. Day and Marcelle Shoop of Holland & Hart, Cheyenne, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Ret.*

URBIGKIT, Justice.

Kathy Ann Stratman (Stratman) was killed by being pulled into a canning machine while employed at a Pepsi–Cola plant in Worland, Wyoming. A wrongful death action was brought by her surviving husband, appellant William W. Stratman, individually and as administrator of the estate. Appeal is taken from summary judgment given to appellees Admiral Beverage Corporation (Admiral), the owner of the canning machine, and Fremont Beverages, Inc. (Fremont), the owner of the franchise, plant facility, and bottling operations. Although other defendants and undecided issues remain, the district court certified the summary judgment in favor of appellees as a final order pursuant to Rule 54(b), Wyoming Rules of Civil Procedure, with a find-

* Retired June 30, 1988.

ing of no just reason for delay for appeal. At issue is the decision by the district court that Admiral, as a closely affiliated corporation with Fremont, was a joint employer of Stratman and was immune from this employee wrongful death suit pursuant to the Wyoming Worker's Compensation Act and the Wyoming Constitution. Although Fremont is also designated as an appellee, appellant does not now contest its favorable grant of summary judgment.

Appellant identifies the issues as whether the district court erred:

"I. * * * in granting summary judgment to both Admiral Beverage Corporation and Fremont Beverages, Inc., upon their claimed common defense of employer immunity under the Wyoming Workers' Compensation Act and Article 10, Section 4 of the Wyoming Constitution?

"II. * * * in failing to grant appellant partial summary judgment on Admiral Beverage Corporation's claimed affirmative defense that Admiral Beverage Corporation was Kathy Ann Stratman's employer, and further that Admiral Beverage Corporation was entitled to employer immunity under the Wyoming Workers' Compensation Act and Article 10, Section 4 of the Wyoming Constitution?" [1]

Appellees phrase the issues in this manner:

"1. Did the District Court correctly find that Kathy Stratman was jointly employed by Admiral Beverage Corporation and Fremont Beverages, Inc.?

"2. Is Admiral Beverage Corporation entitled to immunity from suit under Wyoming's Worker's Compensation Act?"

We reverse.

## I. FACTS

Stratman was killed on January 17, 1986 while working as a "sanitizer" at the plant. Although no one witnessed the accident, she apparently became entangled in the "accelerator fingers" on the can-filling ma-

chine and was consequently pulled into the machine, suffering dismembering injuries and immediate death.

By original complaint and three amendments, appellant initiated wrongful death claims against Crown Cork and Seal Co., Inc., the manufacturer of the can-filling machine; Continental Can Company, Inc., the manufacturer of the "seamer" machine incorporated into or assembled with the can-filling machine; and Admiral, as owner of the can-filling machine. Alternatively added was Fremont, if the court should determine that Admiral was Stratman's employer rather than plant owner Fremont. Various cross-claims were filed by the defendants.

Pertinent to this appeal, appellant, by last complaint, alleged liability against Admiral for strict products liability, negligence, and willful and wanton misconduct. The products liability claim emanated from the relationship of Admiral as lessor of the can-filling machine to Fremont as lessee. Liability was asserted against Fremont on the grounds of negligence and willful misconduct. In answering appellant's complaints, Admiral and Fremont both raised the affirmative defense of employer immunity under the Wyoming Worker's Compensation Act and moved for summary judgment.

In its order granting those motions for summary judgment as favoring Admiral and Fremont on the employer-immunity defense, the district court observed:

"The question of joint employer immunity has statewide ramifications to employers and should be addressed by the Wyoming Supreme Court. In addition, the judgments granted here, combined with the dismissal by stipulation of the crossclaims, terminates all claims against Admiral and Fremont. The issues of fact and law involved in the Worker's Compensation issues are unrelated to the general liability issues which form the

---

**1.** Normally an order denying a motion for summary judgment is not appealable. *Kimbley v. City of Green River,* Wyo., 663 P.2d 871 (1983). In addition, by notice of appeal, appellant stated it to be an " * * * appeal from the September 18, 1987 Order of this Court to the Wyoming

Supreme Court. The Plaintiff specifically appeals that action taken by this Court's final Order Granting Motions for Summary Judgment And For Final Judgment In Favor Of Admiral Beverage Corporation and Fremont Beverages, Inc. * * *."

basis of the Plaintiff's complaint. * * * * "

Understanding the immunity issue requires some detailed analysis of the origin and interrelated internal functioning of Fremont and Admiral as affiliated corporations. Fremont Beverages, Inc., a Wyoming corporation, was founded in 1947 by Newell Sargent as a franchise bottler and distributor of Pepsi–Cola products. In 1960, Forrest L. Clay was brought into the company as a partner and as secretary-treasurer. In the late 1960's, management perceived that cans would eventually replace bottles in the soft drink market. Consequently, Admiral Beverage Corporation was formed in 1970 to operate a canning operation with similar but not identical ownership, with the same management and control from Newell and Clay. Admiral's canning operations were placed in Fremont's plant in Worland with Admiral leasing space from Fremont. The companies remained distinct legal entities with Fremont retaining title to the physical plant and the bottling equipment, while Admiral owned the can-filling equipment. Plant employees worked as needed in either bottling or canning.

In 1977, the arrangement was formalized by the execution of a Management and Operating Services Agreement by which Fremont assumed responsibility for all plant employees, including wages, taxes and worker's compensation fund payments. Admiral would reimburse Fremont for its share of these expenses based on a monthly apportionment of the time each employee spent working in the canning operation.[2]

Forrest Kelly Clay,[3] vice-president of both Fremont and Admiral, in deposition, described the working relationship. Relevant portions of his testimony is contained in the following exchanges and excerpts:

"Q. Generally, how are operations divided between the two companies in this plant?

"A. Fremont Beverage is responsible for the bottling operations of their respective franchise. Admiral Beverage cooperative is responsible for canning beverages only in owning equipment for their respective members.

\* \* \* \* \* \*

"Q. And does Admiral Beverage issue any paychecks with respect to individuals employed in Worland, Wyoming?

"A. No, sir. Admiral reimburses Fremont on a pro rata basis for the amount of work that is done for the Admiral

2. Pertinent provisions of the Management and Operating Services Agreement include:

"1. APPOINTMENT:

"Admiral hereby appoints and employs Fremont as exclusive management agent and appoints it in such capacity to act as general manager, to supervise, direct and control all phases of the management and operation of Admiral's canning, warehousing, storage, office and related activities for a term of five years from the date hereof, subject to the terms and conditions hereinafter stated.

"2. MANAGEMENT AND OPERATIONAL SERVICES:

"Fremont herein agrees to perform the following services for Admiral:

"(a) Selection, employment, termination, supervision, direction, and training of such employees as Fremont determines to be reasonably necessary for the operation of the canning, warehousing, storage and office facilities of Admiral. Fremont shall provide all accounting and bookkeeping services for all accounts receivable and accounts payable of Admiral. However, said accounts shall be and remain the sole and separate property of

Admiral and Fremont shall have no proprietary interest therein.

"(b) Fremont herein agrees to establish all on-site warehousing and canning procedures and the billing, collection, receipt and giving of receipts for all services rendered by or on behalf of Admiral's Worland operation and such other operations as Admiral may undertake from time to time.

\* \* \* \* \* \*

"6. SALARIES:

"Fremont shall pay all salaries and wages due to employees of Fremont, who have performed services for Admiral in it's canning, warehousing, storage and office operations hereto, and shall bill Admiral on a period basis for the cost of the services performed by the employees of Fremont. All FICA taxes, Social Security taxes and Workmen's Compensation taxes paid by Fremont, shall be passed on to Admiral in proportion to the amount of services performed by said employees for Admiral."

3. Forrest L. Clay and Forrest Kelly Clay are separate individuals and their relationship is not stated in the record.

companies by the employees who spend their time on that job duty.

\*    \*    \*    \*    \*    \*

"Q. With respect to worker's compensation premium payments, is there a similar reimbursement to Fremont for the expense of those payments by Admiral?

"A. Yes, sir."

Forrest Kelly Clay further testified that under the agreement,

" \* \* \* Fremont employees will perform the duties needed to run the operation of the can line; to provide the Admiral members with their cans; and Fremont's duties will include the training, selection and supervision and all aspects of running that equipment, and in turn, Admiral will reimburse Fremont for a fair value of what that time is, \* \* \*."

Additionally, Forrest Kelly Clay testified that, as vice-president of both companies, he was paid by Fremont who, in return, would be reimbursed by Admiral on a pro-rata basis. In this respect, his treatment as an employee was the same as that of Stratman.

Of additional relevance to the issues presented in this appeal is the "Employee Handbook" received by Stratman when she began her employment. The handbook, which on its front cover is identified as "Fremont Beverages, Inc., Employee Handbook" and displays a Pepsi–Cola logo, discusses company history, rules, benefits and safety policies. The handbook repeatedly alludes to Fremont as the employer, and, although it refers to both the plant bottled and canned production, it does not otherwise refer to Admiral. In addition, it specifically welcomes the employees to *"Fremont Beverages."* (Emphasis added.)

Evidence includes copies of Stratman's weekly time cards with notations on them indicating that on various weeks her time was allocated to Admiral's can line and on other weeks to Fremont's bottle line. These time cards reflect that just prior to her fatal accident, she was transferred to the building night clean-up crew. The record does not clearly reveal when notations on the time cards were actually made as either during or after the work week.

Although Admiral had an account with the Wyoming Worker's Compensation Division (Division), it had been inactive since the early 1970's, and Stratman was listed only on Fremont's payroll reports. Included in evidence, as drafted by "company and counsel," is a copy of the accident report listing Fremont as employer which was submitted to the Division to report her death.

## II. SUMMARY JUDGMENT

■ Disposition by summary judgment requires the dual findings that there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Farr v. Link*, Wyo., 746 P.2d 431 (1987). In reviewing a summary judgment, we examine the same evidence in the same light as the district court. *Connaghan v. Eighty–Eight Oil Co.*, Wyo., 750 P.2d 1321 (1988). A material fact is one which would have the effect of establishing or refuting an essential element of a cause of action or a defense asserted by the parties. *Baldwin v. Dube*, Wyo., 751 P.2d 388 (1988). We also examine the record from the vantage point most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which may be drawn from the facts. *England v. Simmons*, Wyo., 728 P.2d 1137 (1986). Once the movant has made a prima facie showing that there is no genuine issue of material fact, the party opposing the motion must come forward with specific facts to demonstrate the existence of a genuine issue of material fact. *Davenport v. Epperly*, Wyo., 744 P.2d 1110 (1987).

The parties filed cross-motions for summary judgment with both supporting and opposing evidentiary materials presented for review. As characterized in the *Cordova v. Gosar*, Wyo., 719 P.2d 625, 636 (1986) analysis, this case involves stage three, substantive sufficiency of the affidavits to initially support the motion; stage five, dispositive legal principles; and stage six, substantive sufficiency of responsive affidavits to establish an issue of fact. The

decision of the trial court was essentially defined within the stage five resolution that lacking relevancy of any disputed issues of fact, a decision as a matter of law was appropriate as applying the principle that whether the relationship between the parties will impose a legal obligation upon one for the benefit of the other is a determination to be made by the court. *Naidu v. Laird,* Del.Supr., 539 A.2d 1064 (1988).

## III. IMMUNITY

■ Consistently, this court and courts generally have held that immunity provisions in the Wyoming Worker's Compensation Act should be narrowly construed. *Wessel v. Mapco, Inc.,* Wyo., 752 P.2d 1363 (1988); *Fiscus v. Atlantic Richfield Co.,* Wyo., 742 P.2d 198 (1987); *Bence v. Pacific Power and Light Co.,* Wyo., 631 P.2d 13 (1981). In Bence, we said that the Wyoming Worker's Compensation Act was not intended to abrogate common-law remedies and that amending legislation must contain clear and precise language in order to supersede common-law rights. Id. at 15. Of similar effect is the statement by the Sixth Circuit Court in *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655, 660 (6th Cir.), cert. denied 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed. 2d 47 (1979) that, absent compelling statutory language or social policy justification, "every presumption should be on the side of preserving common law rights." See 2A Larson, *Workmen's Compensation Law,* § 72.50 at 14–228.33 (1987). See also, *Choate v. Landis Tool Co.,* 486 F.Supp. 774 (E.D.Mich.1980).

■ In Wyoming, employer immunity from suit by an injured employee is provided by constitution and statute. Our constitution directs the legislature to establish a state fund to compensate employees or their dependents for injuries occurring in extra-hazardous employments and provides that:

" * * * The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against *any employer contributing as required by law* to such fund in favor of any person or persons by reason of any such injuries or death." (Emphasis added.) Wyo. Const. art. 10, § 4.

Correspondingly, § 27–12–103(a), W.S.1977 (1983 Replacement)[4] provides:

"The rights and remedies provided in this act [§§ 27–12–101 through 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against *any employer making contributions required by this act,* or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person." (Emphasis added.)

Thus, the grant of immunity applies to (1) an employer, (2) who pays into the worker's compensation fund, (3) as required by law. *Fiscus v. Atlantic Richfield Co.,* supra; *Bence v. Pacific Power and Light Co.,* supra. Although Fremont is clearly covered, the district court also held as a matter of law that Admiral was a joint employer benefiting from the requisite fund contributions and was likewise entitled to the immunity. This is the appeal issue which presents our disagreement with the trial court.

## IV. JOINT EMPLOYMENT

First considered is any sustainable factual issues of whether Admiral was a joint employer. If not presented with contention of factual dispute, the question whether an entity is an employer for purposes of the worker's compensation law is determinable as a matter of law. *Bence v. Pacific Power and Light Co.,* supra. This was the trial court decision in perceiving joint employment and consequent immunity. The

---

4. In 1986, Chapter 12 of Title 27 (Worker's Compensation, §§ 27–12–101 through 27–12–805, W.S.1977) was repealed and recreated as present Chapter 14 (§§ 27–14–101 through 27– 14–804, W.S.1977) effective July 1, 1987. Appellant's claims arose under the prior act and, unless otherwise specified, reference in this opinion will be to the earlier act.

law-fact distinction in an employment situation has been described in this manner:

"'* * * any discrepancies in the facts would be for a jury to resolve; however, whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law.'" *Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d 943, 947 (3rd Cir.1987), quoting *English v. Lehigh County Authority*, 286 Pa.Super. 312, 322, 428 A.2d 1343, 1348 (1981).

■ The definitions found in § 27–12–102 provide only minimum guidance in determining whether or not an employment relationship exists. The relevant provisions are:

"(a)(viii) 'Employee' means any person who has entered into the employment of or works under contract of services or apprenticeship with an employer engaged in an extrahazardous occupation, * * *.

* * * * * *

"(a)(ix) 'Employer' means any person employing individuals in any extrahazardous occupation; * * *."

It is established under Wyoming law that the primary test to determine the existence of an employment relationship is right of control of the alleged employer. *Claims of Naylor*, Wyo., 723 P.2d 1237 (1986); *Tauer v. Williams*, 69 Wyo. 388, 242 P.2d 518 (1952); *Fox Park Timber Co. v. Baker*, 53 Wyo. 467, 84 P.2d 736 (1938). Decisional factors include the method of payment, the right to fire, the furnishing of equipment, the scope of the work, and the control of the premises where the work is to be done. *Fox Park Timber Co. v. Baker*, supra; 1C Larson, *Workmen's Compensation Law*, § 44.00 at 8–40 (1986).

■ The right to control is similarly a necessary component in a finding of joint employment. Professor Larson describes joint employment in this fashion:

"Joint employment occurs when a single employee, *under contract with two employers, and under the simultaneous control of both*, simultaneously performs services for both employers, and when the service for each employer is the same as, or is, closely related to, that for the other. * * *" (Emphasis added.) 1C Larson, supra, § 48.41 at 8–511.

See also, *Mission Ins. Co. v. Miller*, 73 Or.App. 159, 697 P.2d 1382, 1383 (1985). The elements of joint employment are: (1) express or implied contract of employment with both employers; (2) simultaneous control of both employers; and (3) the advancing of both employers' interests. 1C Larson, supra, §§ 48.41 and 48.44, at 8–511, 531, 532. The existence of a contract of hire with the employee is the critical threshold inquiry. In *Latham v. Technar, Inc.*, 390 F.Supp. 1031, 1039 (E.D.Tenn. 1974), the court stated:

"Because the employee's acceptance of a contract of hire is necessarily followed by his loss of right to maintain a common lawsuit against his special employer, such acceptance cannot be lightly inferred. It is clear, therefore, that an employee cannot consent to work for a special employer in the dark; '[f]or compensation purposes, [the employee] cannot have an employer thrust upon him against his will or *without his knowledge.*' * * *" (Emphasis in original.) Citing an unidentified edition of Larson, supra, § 48.10 at 211.

In discussing the necessity of a contract of hire, Professor Larson observes:

"Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages. *This reasoning applies not only to the question whether there is any employment relation at all, but also to the question whether one of two or more persons is an em-*

*ployer.* \* \* \*" [Footnotes omitted.] (Emphasis added.) 1C Larson, supra, § 47.10 at 8–287, 289.

See also, *Peterson v. Trailways, Inc.*, 555 F.Supp. 827 (D.Colo.1983).

The question of whether the above elements of joint employment are present often arises, as here with affiliated corporations. The related employer status question is whether corporate separateness should be disregarded for immunity purposes. In *Fiscus,* we cited *Boggs v. Blue Diamond Coal Co.*, supra for the majority rule that, on issues of immunity, courts have refused to disturb the separate corporate identity of parent and subsidiary as stating:

> " '[A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing a business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee.' " *Fiscus v. Atlantic Richfield Co.*, supra, 742 P.2d at 201, quoting *Boggs v. Blue Diamond Coal Co.*, supra, 590 F.2d at 662.

In Fiscus, the plaintiff had brought a personal injury claim against, inter alia, Atlantic Richfield Company (ARCO), the parent company of the employer. The district court granted ARCO's motion to dismiss for failure to state a claim, finding that ARCO was an employer entitled to immunity. We reversed holding that since ARCO itself was not contributing to the fund, it could not claim tort immunity. Consequently, it was not necessary for us to determine if ARCO was an actual employer and the question of joint employment did not arise. Thus, the topic of joint employment by affiliated corporations as one of first impression in Wyoming, leaves its resolution to other jurisdictions for precedent and adaptation.

In *Peterson v. Trailways, Inc.*, supra, the employee of a wholly owned subsidiary brought suit for personal injuries against the parent corporation. Operational facts involved the ownership relation between the parent and subsidiary, account and payroll records of the corporations were kept at the same location by the same personnel, and a consolidated income tax return was filed. Both companies had workers' compensation under the same policy, and the parent exercised the ultimate control over operations, including policy-making and the right to hire and fire. The court, however, found that although the relationship between the corporations was close, it was not one of functional identity; observing that corporate records were not consolidated except for tax purposes, and the subsidiary did pay its share of worker's compensation premiums, that the subsidiary maintained a payroll account and was initially responsible for its costs of operation. In denying the parent corporation's motion for summary judgment, the court, by application of Colorado law, discerned that absent a contract for hire, the exclusive remedy of worker's compensation is not found. With respect to the parent/subsidiary relationship, the court surveyed several cases, cited Professor Larson, and concluded that:

> " \* \* \* attempts to 'pierce the corporate veil' predicated upon common insurance coverage, common payroll funding, and identity of management have failed. \* \* \* " *Peterson v. Trailways, Inc.*, supra, 555 F.Supp. at 833.

The court then stated what it perceived to be the majority rule:

> " \* \* \* In the absence of a 'contract of hire' between the 'employee' and the parent corporation, the bar of workmen's compensation may obtain only in those instances where the facts compel disregard of the subsidiary's separate existence." Id. at 833.

In *Latham v. Technar, Inc.*, supra, a wrongful death action was brought against the parent of a wholly owned subsidiary. The decedent had been hired by the subsidiary. The parent and subsidiary maintained adjacent factories with the parent manufacturing automobile air bags and the subsidiary manufacturing seat belts. Subsidiary paid the decedent on its own paychecks,

and although the name of the parent did appear on these paychecks, the subsidiary's name was most prominent. In addition, a collective bargaining agreement including decedent's signature was submitted to the court showing the subsidiary and union as parties. Approximately two months before her death, decedent was transferred to the parent's air bag operations, although she continued to be paid by the subsidiary and listed as an employee on the subsidiary's payroll reports. Testimony at trial indicated the decedent likely understood that she continued to be employed by the subsidiary since she lacked notice of employment by the parent. After a plaintiff's verdict, the parent moved for a judgment notwithstanding the verdict with assertion that the two corporations were a single entity or, in the alternative, that the decedent was a "loaned employee," a concept similar in required elements to joint employment.

In denial, the district court had held that the companies were separate entities and that neither common ownership and management nor common compensation fund insurer separately or jointly establishes a single-employer unit. The court found persuasive facts from the separate payroll deductions, the collective bargaining agreement, and the subsidiaries' name on decedent's paychecks.[5] The court also concluded that the decedent was not a "loaned employee" because the record was devoid of evidence indicating the decedent consented to an employment relationship with the parent, i.e., there was not an express or implied contract of hire. The court said that the fact that the decedent's activities may have been controlled by the parent was insufficient to establish an employment relationship in the absence of an express or implied contract of hire. Of similar effect and with similar result, see: *Joyce v. Super Fresh Food Markets, Inc.*, supra, 815 F.2d 943, (suit by employee of a subsidiary against related subsidiary); *Boggs v. Blue Diamond Coal Co.*, supra, 590 F.2d 655; *Stoddard v. Ling-Temco-*

*Vought, Inc.*, 513 F.Supp. 314 (C.D.Cal. 1980) (overwhelming weight of authority is that parent/subsidiary or subsidiary/sibling corporations are separate entities not to be treated as joint employers); *Choate v. Landis Tool Co.*, supra, 486 F.Supp. 774; *O'Brien v. Grumman Corp.*, 475 F.Supp. 284 (S.D.N.Y.1979); *Thomas v. Hycon, Inc.*, 244 F.Supp. 151 (D.D.C.1965) (joint employment requires a contract of hire express or implied, between the employee and the dual or borrowing employer irrespective of any arrangement between the two employers); *Gaber v. Franchise Services, Inc.*, Colo.App., 680 P.2d 1345 (1984); *Nutt v. Pierce Waste Oil Service, Inc.*, 112 Ill. App.3d 612, 68 Ill.Dec. 284, 445 N.E.2d 928 (1983); and *Hearn v. Petra Intern. Corp.*, Okl.App., 710 P.2d 769 (1985).

The cases cited to us by Admiral, reaching a different result, represent the minority position and are factually distinguishable. *Antonini v. Hanna Industries*, 94 Nev. 12, 573 P.2d 1184 (1978) involved a "labor broker" situation where the immediate employer contracted with a customer to provide workers for the customer similar to a temporary help service. The Nevada Supreme Court upheld the dismissal of the suit against the customer-employer in finding an employment relationship. Of importance to its decision was that court's policy of liberally construing immunity provisions of Nevada's worker's compensation legislation. In addition, the defendant in that case clearly had and exercised a right of control over the details of the plaintiff's work and arguably, although not addressed by the court, the facts presented, including employee consent, could justify finding an implied contract of hire.

*Mission Ins. Co. v. Miller*, supra, 73 Or.App. 159, 697 P.2d 1382, also cited to us by Admiral, is not on point. That case did not involve a question of employer immunity from suit, but rather which compensation insurer of two separate corporations with identical ownership should pay the benefits to the injured claimant. The

5. With respect to the paycheck, the court said: "* * * The court cannot turn its back to the fact that the principal name appearing on the face of a payroll check has a major influence upon a wage earner. * * *" *Latham v. Technar, Inc.*, supra, 390 F.Supp. at 1035.

claimant had been hired by each corporation on separate dates and he was paid separately by each until the companies experienced financial difficulties and their bank demanded consolidation of both companies' funds into one account. Claimant performed services for each corporation every day. The court found the corporations were distinct legal entities but both insurers were liable because the claimant was a joint employee. That decision is in accord with a policy of liberally construing benefit provisions in worker's compensation cases. *Matter of Johner,* Wyo., 643 P.2d 932 (1982).

■ Having examined the law of joint employment, we return to the evidence in this case to determine if summary judgment was properly granted to Admiral as a matter of law. With reference to the elements of joint employment, it is clear on the record that Stratman's activities at the plant advanced the interests of both Fremont and Admiral. On the question of the existence of a contract of hire, express or implied, the evidence is conflicting. There is neither evidence of an express contract nor any direct evidence whether the employee had knowledge of or consented to an employment relationship with Admiral. Both parties rely on evidentiary inferences for factual argument. Admiral submitted Stratman's weekly time cards with notations on them indicating that for various weeks her time was allocated to either Fremont or Admiral. Again, however, the record does not disclose whether these notations were made before or after the time cards were turned in by Stratman. In addition, Admiral submitted into evidence a letter to Newell Sargent from appellant, written about three weeks after Stratman's death, in which appellant, as widower, indicated that he had applied for employment with Admiral and stated that his wife had enjoyed working at Pepsi. Admiral argues that, by inference, this letter indicates that Stratman knew that Admiral was a plant employer.

Countering this evidence was appellant's evidence that paychecks were all issued by Fremont, specifying Fremont as "payor."

In addition, appellant submitted the "Fremont Beverages, Inc. Employees Handbook" received by Stratman when she entered employment at the plant. Recognizing that a contract of hire will not be lightly inferred and that there must be a showing of informed consent to an employment relationship, *Latham v. Technar, Inc.,* supra, 390 F.Supp. 1031, we conclude that the existence of a contract of hire presents a genuine issue of material fact, precluding summary judgment in favor of Admiral. *Greaser v. Williams,* Wyo., 703 P.2d 327 (1985).

Similarly, we find material factual issues with respect to the right of control. On this issue, Admiral submitted evidence that the ownership and senior management of the corporations were the same, and that under their accounting arrangement, Stratman's hours were variously allocated between Fremont or Admiral. Admiral also submitted the affidavit of Forrest L. Clay, the president of Admiral and secretary-treasurer of Fremont. In his affidavit, Mr. Clay testified that since 1970, Admiral and Fremont jointly managed and operated the plant, the two companies had never considered the employees to be solely employed by Fremont, the employees worked simultaneously for both companies, and the agreement did not alter the daily operation of the plant. Countering this evidence, appellant submitted the Management and Operating Services Agreement which clearly conferred management functions at the plant upon Fremont, including hiring, training, supervision, and termination of employees, and directed Fremont to pay salaries and wages to "employees of Fremont who have performed services for Admiral." In addition, Fremont submitted the deposition testimony of Forrest Kelly Clay that, "Admiral Beverage cooperative is responsible for canning beverages only in owning equipment for their respective members," which included Fremont and at least nine other bottlers.

■ On this issue of control, we perceive that Admiral's evidence and argument, as based on identity of senior management, substantially disregard both the separate

corporate identities and the specific agreement between them. As in *Fiscus v. Atlantic Richfield Co.*, supra, 742 P.2d at 201, we will continue to adhere to the majority rule that, on issues of immunity, the separate corporate identity of affiliated corporations will not be disturbed. Similarly, we find the accounting arrangement allocating employee hours between the two companies unpersuasive as to the right of control. Nevertheless, the testimony of Forrest L. Clay regarding joint management conflicts with the Management and Operating Services Agreement[6] and with certain testimony of Forrest Kelly Clay, thus creating a factual issue not amenable to summary judgment. In summary, therefore, on the issue of joint employment, we hold that the record discloses genuine issues of material fact as to the existence of a contract of hire between Stratman and Admiral and as to Admiral's right of control over Stratman. It was error for the district court, as a matter of law, to hold on this evidence that Admiral was a joint employer of Stratman. See *Leithead v. American Colloid Co.*, Wyo., 721 P.2d 1059 (1986).

## V. CONTRIBUTION TO THE STATE FUND

■ Next presented is whether the district court was correct in ruling, for summary judgment purposes, that Admiral was contributing to the worker's compensation fund. Upon remand, this question will only arise if, after trial, the fact finder determines Admiral was a joint employer of Stratman. Coverage of affiliated corporations under the same worker's compensation insurance policy or state account is not relevant to the issue of whether the employee of one affiliate is also the employee of the other. *Peterson v. Trailways, Inc.*,

supra, 555 F.Supp. 827; *Stoddard v. Ling-Temco-Vought, Inc.*, supra, 513 F.Supp. 314; *Choate v. Landis Tool Co.*, supra, 486 F.Supp. 774; *Latham v. Technar, Inc.*, supra, 390 F.Supp. 1031; *Thomas v. Hycon, Inc.*, supra, 244 F.Supp. 151. If Stratman was not an employee of Admiral, Admiral is not immune from suit by appellant regardless of whether Admiral was making fund payments.

To determine if Admiral was "making contributions required by this act," § 27–12–103(a), we first look to the provisions of the act controlling employer contributions. Section 27–12–201(a) specifies payroll reporting requirements and provides in pertinent part:

"Each employer shall forward to the director, on forms provided by the director, a true copy of the payroll of his employees engaged in extrahazardous employment during the current calendar month, or quarterly reporting period, certified and affirmed by himself or a person having knowledge of the payrolls, under penalty of perjury. Payroll reports and monthly payments required by this act [§§ 27–12–101 through 27–12–804] shall be submitted on or before the fifteenth day of the month following the month for which the earnings are computed and paid."

Sections 27–12–202, 204 and 205 describe the specific periodic amounts each employer must pay. Section 27–12–207(a) and (b) provides penalties and enforcement mechanisms available to the state against noncomplying employers described as:

"Any employer who does not apply for and fully qualify an account under this act [§§ 27–12–101 through 27–12–804] for the coverage of his eligible employees or having an account, fails, neglects or refuses to make the monthly or quar-

---

**6.** Appellant does not raise an issue as to the admissibility of the testimony of Forrest L. Clay contradicting the agreement and we need not decide the question in reversing the summary judgment granted to Admiral. We note, however, that the question of whether the parol evidence rule may be asserted by or against third parties is not clear under the law. Although text writers generally answer the question in the affirmative, many cases hold to the

contrary. See Calamari and Perillo, *The Law of Contracts*, § 3–8 at 164 (3d. ed. 1987); 4 Williston, *Williston on Contracts*, § 647 at 1154 (3d. ed. 1961); 3 Corbin, *Corbin on Contracts*, § 596 at 572 (1960); Annotation, *Applicability of Parol Evidence Rule in Favor Of Or Against One Not a Party to Contract of Release*, 13 A.L.R.3d 313 (1967); and Comment, *The Parol Evidence Rule and Third Parties*, 41 Fordham L.Rev. 945 (1973).

terly period payments as provided by this act * * *."

and

"Any employer who fails to furnish a true copy of his payroll of his employees * * * or to make payments required by this act *to the director* * * *." (Emphasis added.)

The record shows that Admiral was filing inactive payroll reports and not making direct contributions. Appellant submitted the affidavit of Betty Lou Dunagan, State Division Payroll Compliance Supervisor, as testimony that Admiral had only the inactive account and had not filed any payroll reports listing Stratman as an employee. Attached to her affidavit were copies of Admiral's payroll reports to the Division for the years 1985 and 1986 showing an inactive account without any employees and payment of only an administrative fee. Ms. Dunagan testified in her affidavit with appended payroll reports that Fremont, at the same time, did maintain an active account with the Division and had listed Stratman as an employee during the course of her plant employment.

To provide factual support for its motion for summary judgment, Admiral submitted documents to prove contribution. Much of this material consisted of internal accounting documents showing how Stratman's and other employees' time were allocated between Fremont and Admiral, and establishing that Admiral reimbursed Fremont for premium payments on a pro-rata basis for allocated time depending on work done. Admiral additionally submitted the affidavit of Forrest L. Clay as testimony that the companies, in the early 1970's, decided to "consolidate the worker's compensation payroll reports and premium payments on Fremont's existing account with the Worker's Compensation Division." Admiral also submitted a separate affidavit of Betty Lou Dunagan. In this affidavit, Ms. Dunagan testified that she was familiar with the manner in which employers make their payroll reports and with the history of the Division's policy with respect to such reports. She further testified that:

"There are several accounts with the Worker's Compensation Division which include payrolls for more than one corporation if that corporation is a wholly owned subsidiary or division of the parent corporation which holds the account. These corporations report their payroll and pay their premiums, and that of their separate subsidiaries and divisions, through a single account number."

Admiral correctly observes in its brief that this court has never determined exactly what payment and reporting procedures must be followed in order "to be contributing as required by this act." In *Fiscus v. Atlantic Richfield Co.*, supra, 742 P.2d 198, we held that ARCO, as the parent corporation to the subsidiary employing the claimant, was not entitled to immunity because there was no evidence or even an allegation of fund payment.

In *Bence v. Pacific Power and Light Co.*, supra, 631 P.2d 13, we were confronted with the question of whether the owners of property, who were deemed a surety for their contractor's responsibility for compensation fund contributions by the statute then in effect,[7] were statutory employers entitled to immunity.[8] We held in Bence that because they were only potentially liable to the fund as sureties, the owners were not entitled to immunity. In so holding, we said that:

" * * * The statute does not grant immunity to those responsible for making payments to the fund nor does it say anything about granting immunity to those

---

7. Section 27–60, W.S.1957 provided in relevant part:

"(D) * * * in private work the contractor, prime or general, shall be responsible, primarily and directly to the industrial accident fund for all obligations against the total payroll of the work and for the amounts due it, and the owner of the property affected by the contract shall be surety for such payments."

8. Whether Admiral could be considered a statutory employer pursuant to § 27–12–109(e) and (f) was not raised in the instant case and we do not consider the question. Immunity, based on the status of being a statutory employer, is an affirmative defense. The failure to raise the defense is a waiver. *Texas Gulf Sulphur Co. v. Robles,* Wyo., 511 P.2d 963 (1973).

having a potential liability to the fund. The grant of immunity is set out in § 27–50, W.S.1957, and it extends to 'any employer contributing, as required by law.'" Id. at 18.

and

" * * * Neither the constitution nor statutes specifically grant immunity to a surety, guarantor, or general contractor who has contracted to reimburse the employer, who actually makes the payment." Id. at 18.[9]

With respect to the owners' contracts to reimburse the contractor in Bence, we stated that the arrangement was not entitled to any significance because the owners and the contractor could not, by contract, limit the cause of action of the injured employee of the contractor. Id. at 15. The facts in this case are distinguishable from Bence. In Bence, the owners were clearly not employers of the injured worker. The reimbursement arrangement in Bence was not between related corporations and did not involve a purportedly consolidated account between affiliated employers as here.

▪▪▪▪ The question which we now decide is whether two or more affiliated corporations as joint or co-employers may report their payroll and submit their premium payments to the Division under one consolidated account and thereby be "making contributions as required by this act." If we answer that question in the affirmative, the further question is whether a valid consolidated account is accomplished by an arrangement such as the one that existed here between Admiral and Fremont.

The Wyoming Worker's Compensation Act, as in effect for this case, does not address consolidated accounts. Betty Dunagan's affidavit indicated that the Division has in practice allowed affiliated corporations to consolidate their accounts. We have said that the construction placed upon a statute by the agency charged with its execution is entitled to some deference.

*Matter of Hasser,* Wyo., 647 P.2d 66 (1982); *Demos v. Board of County Com'rs of Natrona County,* Wyo., 571 P.2d 980 (1977). In construing a statute, we must consider the interpretation given the statute by the agency administering it. *Matter of Hasser,* supra; *Langdon v. Lutheran Broth.,* Wyo., 625 P.2d 209 (1981).

Additionally, as Admiral points out in its brief, the Wyoming Worker's Compensation Act, as revised effective July 1, 1987 (§§ 27–14–101 through 27–14–804, W.S. 1977), expressly recognizes consolidated accounts for affiliated employers. Under the new act, the Division is directed to establish employment classifications based on the varying hazards of different employments and the claim experience of specific employers, and to set premium rates for the various classifications accordingly. Section 27–14–201. Section 27–14–202(d) in reference to payroll reporting requirements, provides in relevant part:

"*Any employer, or multiple employers under common control,* employing employees covered under this act that would qualify as separate classifications may elect to report the payrolls of these entities as required by this section under one (1) employment classification or under separate employment classifications. The division shall classify the employer's payroll or payrolls in accordance with W.S. 27–14–201. * * * *Any employer or multiple employer under common control* employing employees covered by this act who elects to report the payrolls under one (1) employment classification *shall be treated as a single employer for all purposes of this act.*" (Emphasis added.)

Thus, multiple employers under common control are now to be treated as a single employer if they elect to report their payroll under one classification since the new act envisions consolidated accounts for affiliated employers. Although not conclusive, subsequent enactments by the legislature are entitled to consideration as an aid

---

**9.** The current version of the act, Section 27–14–206(e) and (f), W.S.1977 (1987 Replacement), specifically grants immunity to a contractor who pays premiums on behalf of the employees of a subcontractor and provides that an owner shall be deemed a contractor in certain circumstances.

in interpreting an ambiguous statute. *Inexco Oil Co. v. Oil and Gas Conservation Commission*, Wyo., 490 P.2d 1065 (1971); *Wyoming Hospital Ass'n. v. Harris*, 527 F.Supp. 551 (D.Wyo.1981), aff'd 727 F.2d 936 (10th Cir.1984).

Based on the foregoing, we are persuaded that, under the act as it existed in relation to this case, affiliated corporations could report their payroll and pay their premiums under a single consolidated account. We additionally perceive, however, that such an arrangement requires the express approval and knowledge of the Division to qualify as "contributing as required by this act." [10] The affidavit of Betty Dunagan in which she testifies to the Division's practice of allowing consolidated accounts reflects that required knowledge and approval in accord with § 27–14–202(d) of the current act. The penalty provisions of the act, as it existed in relation to this claim, also required such approval and knowledge. Section 27–12–207(a) makes certain penalties and remedies available to the Division as against "[a]ny employer who does not apply for and *fully qualify an account* under this act * * *." (Emphasis added.) By holding that a consolidated account with the Division for affiliated corporations constitutes "making contributions required by this act" only where such an arrangement is expressly approved by the Division, we do not vitiate our policy of narrowly construing immunity provisions in the act. Such an arrangement allows the Division to monitor compliance with payroll reporting and premium payment requirements without elevating form over substance in determining who is contributing as required. Established liability for premium payment is a necessary coordinate for defined coverage and provided immunity.

▪ There is no evidence in this record that the arrangement between Admiral and Fremont was approved by the Division, and

evidence indicating whether the Division even had knowledge of the arrangement is equivocal at best.[11] In reality, the evidence in the record tends to show simply a pro forma or ad hoc agreement between the two related corporations to facilitate their accounting procedure. Thus, on the issue of whether Admiral was contributing as required by the act, the materials submitted by Admiral were substantively insufficient to support its motion for summary judgment under stage three of the Cordova analysis. *Cordova v. Gosar*, supra, 719 P.2d at 634, 635. Admiral failed to meet its initial burden of a prima facie showing that there was no genuine issue of material fact. Consequently, Admiral was not entitled to summary judgment regardless of how appellant responded. *Davenport v. Epperly*, supra, 744 P.2d 1110; *Matthews v. Wyoming Dept. of Agriculture*, Wyo., 719 P.2d 216 (1986).

In conclusion, we hold that genuine issues of material fact exist relating to (1) whether Admiral was a joint employer of Stratman; and (2) whether Admiral was contributing to the worker's compensation fund as required by the act, and reverse the entry of summary judgment granting Admiral immunity from suit.

## VI. PARTIAL SUMMARY JUDGMENT FOR APPELLANT

As a final matter, we address appellant's argument that the district court erred in failing to grant partial summary judgment *in his favor* on the question of immunity for Admiral. Although in certain cases we will reverse the grant of summary judgment and remand with instructions to the district court to enter summary judgment or partial summary judgment in favor of the opposing party, *Leithead v. American Colloid Co.*, supra, 721 P.2d 1059, this is not such a case. *Seay v. Vialpando*, Wyo., 567 P.2d 285 (1977). Having determined

---

10. Obviously involved is *joint* liability for premium payments.

11. The official copies of Fremont's payroll reports, verified by Division employee Betty Dunagan as being those received by the Division, which were submitted to the district court by appellant, do not contain the accounting notations demonstrating allocation of employee salary between Admiral and Fremont as are found in the copies of the same reports submitted by Admiral from it's office records.

that litigable issues of fact exist, appellant is no more entitled to summary judgment than was Admiral.[12]

## VII. CONCLUSION

Summary judgment granted to Fremont Beverages, Inc. is affirmed; summary judgment granted to Admiral Beverage Corporation is reversed; and the case is remanded for further proceedings consistent with this opinion.

BROWN, Justice,[1] specially concurring.

I concur in the result reached by the court in this case. I think, however, that the standard for determining the existence of an employment relationship, under the circumstances of this case, is more accurately set out in *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 712–713 (Wyo.1987), where we said:

We determine the existence of an employment relationship as a matter of law when only one reasonable inference about the existence of the asserted relationship can be drawn from the facts. *Battlefield, Inc. v. Neely*, Wyo., 656 P.2d 1154, 1160 (1983). *The controlling inquiry in determining if an employment relationship exists is whether the alleged employer retained the right to control the alleged employee's work.* Id., (citing *Combined Insurance Company of America v. Sinclair*, Wyo., 584 P.2d 1034, 1042 (1978)). *If the right of control has been exercised, but never retained, an employment relationship does not exist for that reason only.* *Battlefield, Inc. v. Neely*, supra, at 1161. (Emphasis added.)

---

12. It is also questionable whether the denied summary judgment is a proper subject of this appeal if we consider the specific text of the notice of appeal quoted in footnote 1.

1. Chief Justice, Retired, June 30, 1988.