Argued and submitted November 13, 2002, affirmed March 20, 2003

In the Matter of the Compensation of
Lisa R. McDonald, Claimant.

LIBERTY NORTHWEST INSURANCE CORPORATION
and Kunert Electric Co.,
*Petitioners,*

*v.*

Lisa R. McDONALD;
Fairmont Insurance Co.;
TIG Insurance Co.;
and The Mentone Company,
*Respondents.*

00-06812 and 00-03565; A117241

66 P3d 528

E. Jay Perry argued the cause for petitioners. With him on the briefs was Employers Defense Counsel.

Christopher D. Moore argued the cause for respondent Lisa R. McDonald. With him on the brief was Malagon, Moore & Jensen.

Jerald P. Keene argued the cause and filed the brief for respondents Fairmont Insurance Co., TIG Insurance Co., and The Mentone Company.

Before Landau, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Liberty Northwest Insurance Corporation (Liberty) and its insured, Kunert Electric Co. (Kunert), seek review of an order of the Workers' Compensation Board (the board) holding that they are jointly responsible with Fairmont Insurance Co. and TIG Insurance Co. and their insured, The Mentone Company (Mentone), for claimant's compensable injuries. We conclude that the board's order is supported by substantial evidence and is correct as a matter of law and affirm.

The facts are not disputed. Mentone is a real estate investment company owned by James and Mary Kunert and Mark Crawford. Kunert is a corporation that does electrical contracting and is owned by James Kunert. Claimant worked as a bookkeeper for both entities. The two jobs together provided claimant with full-time employment. Claimant carried out most of her work for both jobs in an office located in Kunert's building. Occasionally she would travel to a building owned by Mentone. Claimant worked with a separate computer and filing cabinet for each employer. She was supervised in both jobs by James and Mary Kunert. She was paid by separate checks from each employer at an hourly wage of $11.00. Some weeks claimant worked primarily for one employer; some weeks she worked primarily for the other. Claimant determined for whom she worked on a particular day, depending on the current priorities. She was also available to work for the other employer as needed. The tasks for the two employers were of a similar type, but they were for the most part separate; however, there were a few overlapping tasks. For example, claimant picked up prepared payroll for both employers at the same time because they were prepared by the same company. Claimant occasionally shopped for office supplies for both employers simultaneously. Only Mentone reimbursed claimant for her travel.

During the first week of November 1999, claimant worked primarily for Mentone. On November 3, 1999, she left her office and traveled to Mentone's building to repair some office equipment. She was involved in a head-on collision on her return trip and suffered multiple injuries. The two

employers and their insurers dispute who should be responsible for claimant's injuries. The board, in affirming the administrative law judge, reasoned that claimant's availability to perform priority tasks for both employers, which the board described as her "on-call" status, made her a joint employee and concluded that both employers are responsible for her injuries. Liberty seeks review, asserting that the board erred in determining that claimant was an "on-call" employee. Further, Liberty asserts that claimant was not a joint employee but, rather, was a dual employee, working two separate jobs separately, and that she was injured while working exclusively for Mentone, which should be exclusively responsible for her paying her benefits.

It is not contested that claimant's injuries are compensable. The only question is which of the two employers is responsible for paying her benefits. As noted, the parties cast the resolution of that issue in terms of whether claimant was a dual or a joint employee at the time of her injury. The question whether a person is a dual or joint employee is in part a question of law and in part one of fact. We review the board's findings with regard to claimant's working conditions for whether they are supported by substantial evidence. The ultimate question of whether the facts require the conclusion that claimant was a joint employee is a legal issue that we review for errors of law. Because we conclude that the board correctly held that claimant was a joint employee, we affirm.

Liberty takes the view that claimant was a dual employee working separately for each employer and that, because she was working exclusively for Mentone at the time of her injury, Mentone is exclusively responsible for paying her benefits. Drawing on the authority of our opinion in *Mission Insurance Co. v. Miller*, 73 Or App 159, 697 P2d 1382 (1985), Mentone seeks to affirm the board's determination that claimant was a joint employee and that Mentone and Kunert are joint employers, jointly responsible for claimant's benefits.

In *Mission Insurance Co.*, the claimant worked part time for an ambulance company and part time for a medical supply company that shared office space. His work for the two companies totaled 40 hours per week. He was assigned

each day to work primarily for one of the companies, but he was required to be available to work for the other company during his work day and would perform services for each company on all days, depending on the priorities. He was injured on a day when he was working primarily for the ambulance company but at a time when he was performing a task for the medical supply company. The two companies had different workers' compensation insurance carriers, which disputed responsibility for the injury. In resolving the case, we discussed the dual/joint employment distinction:

> "This court has recognized that it is possible for an employe to have two employers for the purposes of workers' compensation. *Robinson v. Omark Industries, Inc.*, 46 Or App 263, 611 P2d 665 (1980). In resolving responsibility disputes between two or more employers, the classifications of 'dual' and 'joint' employment are useful. The two terms are aptly described in 1C Larson, *Workmen's Compensation Law*, § 48.40 (1982):

> " 'Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation.

> " 'Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury.'

> "A joint employe is subject to the simultaneous control of two employers and performs simultaneous and related services for each. Dual employment is characterized by separate control and separate performance of unrelated services."

*Mission Insurance Co.,* 73 Or App at 162-63. In concluding that the claimant was a joint employee and that both employers were responsible for his injury, we explained:

> "[T]he owners and managers of [the two employers] are the same, and claimant was subject to their simultaneous control. Claimant performed services for the companies simultaneously, in the sense that, even if claimant was working primarily for one employer, he was always on call for the other, as needed. Both companies benefited from claimant's unique 'on call' status and from his availability to perform priority tasks. That, more than any other factor, leads us to conclude that claimant was a joint employe."

*Id.* at 163.

Here, the board reasoned that, as in *Mission Insurance Co.,* both employers benefited from claimant's "unique 'on call' status," that is, her availability during her work day to work for both employers as needed, and held that "the 'on-call' nature of her work status for both employers makes her subject to their simultaneous, not separate control." In Liberty's view, claimant's work did not satisfy the criteria for "on call" employment for purposes of workers' compensation, and the board erred in treating her as an on-call employee. Liberty's argument misses the mark. Contrary to Liberty's contention, in describing claimant's "unique 'on call' status," the board did not place claimant in the legal category of an on-call employee for purposes of calculating workers' compensation benefits. Rather, it used that term to describe the flexibility of claimant's work schedule for her two employers, that is, her as-needed availability to work for both employers during her work day. Substantial evidence supports the board's determination that claimant was available to work for both employers during her work day.

In light of the board's determination that claimant was available to work for both employers as needed, as well as the fact that claimant's work for both companies was under the same supervision and right to control, we agree with the board's determination that claimant was a joint employee and that her injuries are the joint responsibility of both employers. It matters not that claimant was working exclusively for Mentone at the time that she was injured. Her

status as a joint employee means that her employment is joint, whether the tasks that she was performing at the time of her injuries were for one or both of her employers.

Affirmed.